**Gerald MARX, Plaintiff,**

v.

**SCHNUCK MARKETS, INC., Defendant.**

**No. 93–2375–JWL.**

United States District Court,
D. Kansas.

Sept. 30, 1994.

Stephen J. Dennis, Kenneth R. Battis, Dennis & Battis, P.A., Fairway, KS, for plaintiff.

Nancy M. Landis, Spencer, Fane, Britt & Browne, Overland Park, KS, Dennis G. Collins, Lisa K. Boyer, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves claims by plaintiff Gerald Marx against defendant Schnuck Markets, Inc. ("Schnucks") for age discrimination, retaliation for participation in activities protected by the Fair Labor Standards Act

("FLSA"), and breach of contract and FLSA violations for failure to pay overtime compensation. The matter is currently before the court on defendant's motion for summary judgment (Doc. # 56).

In its motion, defendant seeks summary judgment on plaintiff's claims for discriminatory demotion and discharge under the Age Discrimination in Employment Act ("ADEA"), and plaintiff's claims for retaliatory demotion and discharge for engaging in activity protected under the FLSA, in violation of 29 U.S.C. 215(a)(3). For the reasons set forth below, defendant's motion is granted.

## II. Factual Background

Plaintiff's wife, Terri Lynn Marx, completed an application for employment at Schnucks on February 20, 1991, and her first day of work was February 25, 1991. At the time she completed her employment application, she listed her name as Terri Lynn Green, and her address as 9126 Lowell.

Plaintiff was hired by Schnucks on March 2, 1991 as a dairy/frozen food clerk at the rate of $5.00 per hour.[1] Plaintiff was fifty-one (51) years of age when he was hired. On August 17, 1992, Schnucks promoted plaintiff to the position of dairy/frozen manager with a pay rate of $9.50 per hour. Plaintiff was fifty-two (52) years of age at the time of this promotion.

On October 4, 1992, Terri Lynn Marx reported to Schnucks that she believed the company was failing to pay overtime in accordance with Federal law. After Schnucks completed an internal investigation of its wage and hour practices, Schnucks concluded there were some violations and elected to report the matter to the United States Department of Labor. Schnucks prepared an employee survey for the purpose of allowing employees to collect unpaid overtime, which was approved by the United States Department of Labor, and mailings were made to all employees on December 9, 1992. A second mailing was done to non-responding employ-

ees on January 4, 1993. Eventually, Schnucks distributed a total of $50,377.33 to 117 current and former employees.

On October 14, 1992, Terri Lynn Marx was terminated from her employment at Schnucks. Defendant claims that her termination was the culmination of an investigation that began in August, 1992, due to several bizarre comments made by Ms. Marx. Following the investigation, Schnucks terminated her employment for allegedly falsifying her original employment application, including her use of a social security number that was not her own.

On November 24, 1992, plaintiff and his wife filed a class action suit against Schnucks in the District Court of Johnson County, Kansas, alleging wage and hour violations against Schnucks. In addition, Ms. Marx claimed that she was retaliated against by her discharge for bringing the wage and hour concerns to Schnucks' attention.[2]

On February 12, 1993, Traci Stephenson, an employee at the Schnucks store where plaintiff was a manager, filed a complaint with store management regarding an alleged encounter she had with plaintiff. In her complaint, Ms. Stephenson described an encounter she had with plaintiff at work regarding the wage and hour survey, wherein plaintiff made her feel uncomfortable, and related that plaintiff's conduct was affecting her work performance. On February 15, 1993, Schnucks presented plaintiff with a questionnaire concerning Ms. Stephenson's allegations. In response to the questionnaire, plaintiff indicated that he did not remember the encounter.

On February 19, 1993, Schnucks demoted plaintiff from his manager's position to that of a clerk at another store. In its demotion notice, Schnucks indicated its belief that plaintiff had not been truthful in connection with the investigation into Ms. Stephenson's complaint. Plaintiff continued to receive his same salary of $9.50 per hour.

---

**1.** As discussed later, at the time he was hired, Schnucks was unaware that plaintiff and Terri Lynn Marx were married.

**2.** Eventually, both the class action suit and Ms. Marx' individual claims were voluntarily dismissed.

On September 14, 1993, plaintiff filed his complaint in this court alleging that Schnucks had demoted him because of his age in violation of the ADEA. Subsequently, plaintiff amended his complaint to include a claim that Schnucks had demoted him in retaliation for plaintiff's and plaintiff's wife's complaints and involvement in the suit regarding the overtime wages.

During discovery in connection with this lawsuit, Schnucks discovered several misrepresentations with regard to plaintiff's employment application. Chief among these were plaintiff's apparent misrepresentations regarding the fact that he was married to Terri Lynn Marx.[3] Plaintiff left blank the box on his employment application indicated for "relatives employed by Schnuck Markets" even though he was married to Terri Lynn Marx at the time he made application. Plaintiff also indicated his marital status as divorced on his new hire form, completed in conjunction with his application, even though he was married to Terri Lynn Marx at the time. Additionally, plaintiff indicated on his Federal IRS Form W–4 that his marital status was single. Plaintiff also was living with his wife at 9126 Lowell at the time he applied for employment, yet listed a different address, where he had never resided, on his employment application.[4]

When questioned about the apparent misrepresentations on his application at several depositions in this case, plaintiff gave several different explanations. At one deposition, when questioned as to why he had left the box blank regarding "relatives employed by Schnuck Markets," he replied that he didn't know at the time whether his wife was employed by Schnuck Markets. However, in that same deposition, he stated that his wife was working at Schnucks' Shawnee store when he applied for employment. As to the question regarding his residence address, plaintiff at one point testified that he had no residence at the time of his application, yet later admitted he was living at 9126 Lowell at the time he applied. Additionally, plaintiff first contended that he did not intentionally misrepresent his marital status on his employment application and other documents, and that he had not spoken with anyone regarding how to complete the answers on the application form, yet later contended he had failed to acknowledge that he was married on the forms because his wife had told him that Dan Kunz, a Schnucks manager, had told his wife that "it would be best that we were not married to keep everyone from getting into trouble."

On June 27, 1994, one day before the pretrial conference was originally held in this matter, Schnucks terminated plaintiff. Among the reasons given by Schnucks in plaintiff's termination letter were: (1) that plaintiff falsified his employment application, new hire form and Federal IRS/Form W–4; (2) that at various depositions plaintiff falsely denied that a wedding shower and bachelor party were held in his honor; (3) that he admitted at his June 12, 1993 deposition that he had falsified and/or deliberately omitted pertinent information to help him obtain employment with the company; (4) that, consistent with company policy, any person who is found to have deliberately falsified their employment application is terminated;[5] and (5)

---

**3.** William Jones, a Schnucks manager, testified in his deposition that Schnucks had a policy that prohibited married persons from working in the same store. However, defendant has produced no evidence that this was a written policy.

**4.** Apparently, plaintiff's deceptions regarding his marital status did not end with his employment application. Schnucks presents evidence regarding a wedding shower that was held in honor of plaintiff and his wife in the spring of 1992, at which Schnucks employees purchased gifts for the couple, and evidence that plaintiff was honored at a bachelor party thrown for Mr. Marx and another employee during that same time period. Plaintiff denies that he was aware the party held at the store was a wedding shower.

However, defendant has produced affidavits from numerous employees who attended the party stating that the party included decorations, cake and the presentation of wedding gifts. The employees uniformly state that plaintiff knew the party was a wedding shower.

**5.** The associate agreement signed by plaintiff provides in part:

In consideration of my employment and in consideration of the salary, commissions or wages to be paid to me during the continuance of such employment, I agree as follows:
(h) I warrant the forgoing to be a truthful and complete statement of facts. Furthermore, any untrue or misleading answer or concealment

that plaintiff and his wife both engaged in a conspiracy to gain employment with the Company and embarked on a deliberate course of conduct from the outset of his employment to defraud his co-workers and members of management as to his marital status.

### III. Summary Judgment Standards

 A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

 The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute be-

of any fact will constitute sufficient cause for

tween the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion

#### A. Plaintiff's ADEA Claims

 The Age Discrimination in Employment Act is remedial and humanitarian legislation that is to be liberally construed for the purpose of ending age discrimination in employment. *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir.1976), *aff'd*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977). The Act prohibits an employer from discriminating against an employee with respect to his or her compensation, terms, conditions, or privileges of employment based on the individual's age. 29 U.S.C. § 623(a)(1). Under ADEA, a plaintiff is required to prove that age was the determining factor in the decision adversely affecting him. *E.E.O.C. v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988); *Perrell v. Financeamerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984). He or she need not prove that age was the sole reason for the adverse treatment, but must show that it "made the difference" in the employer's decision. *Sperry Corp.*, 852 F.2d at 507; *E.E.O.C. v. Prudential Federal Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985).

 The Tenth Circuit has adopted the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for discrimination claims and has adapted it to claims under ADEA. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir.1988);

my immediate discharge.

*Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988). A plaintiff must present a prima facie case of employment discrimination by showing that he or she: (1) is within the protected age group; (2) was doing satisfactory work; (3) was discharged despite the adequacy of this work; and (4) was replaced by a younger person. *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir.1986). Once a plaintiff establishes a prima facie case, the defendant has the burden to articulate a legitimate, nondiscriminatory reason for the treatment of the plaintiff. *Cockrell,* 781 F.2d at 177. The burden of persuasion then remains with the plaintiff to demonstrate that the defendant's explanation is a mere pretext for unlawful discrimination. *Id.* A plaintiff may produce evidence that would satisfy this burden by showing directly that age discrimination more likely motivated the defendant, or by showing that the defendant's explanation is not worthy of belief. *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993).

■ The court finds that plaintiff has satisfied the prima facie case requirements for his age discrimination claims for both wrongful demotion and wrongful discharge. Plaintiff was within the protected age group at the time of both actions, and has presented evidence through work reviews that his performance was adequate. Plaintiff has also produced evidence that his replacement following his demotion from dairy/frozen food manager was younger than he was.

■ The court further finds that defendant has articulated legitimate, nondiscriminatory reasons for both its demotion of plaintiff and its later termination of plaintiff. Defendant has presented evidence that the reason for plaintiff's demotion was defendant's belief that plaintiff was not truthful in connection with an investigation undertaken by defendant following its receipt of a complaint from an employee at the Schnucks store where plaintiff was manager regarding an alleged encounter she had with plaintiff. As to plaintiff's termination, defendant has presented evidence that it terminated plaintiff due to the fact that plaintiff misrepresented his marital status on his employment application for the purpose of gaining employment at Schnucks, that plaintiff continued to misrepresent his marital status following his employment, and that defendant therefore terminated him consistent with its policy of terminating persons found to have deliberately falsified their employment applications.

■ Given defendant's articulation of a legitimate, nondiscriminatory reason for plaintiff's treatment, the burden thus falls on plaintiff to produce evidence that age discrimination more likely motivated plaintiff, or to show that defendant's articulated reasons for demoting and later terminating him are merely pretextual and not worthy of belief. The ultimate burden of persuasion remains with the plaintiff. "In ADEA cases, no matter whether tried or submitted on summary judgment motion, it is obvious that the ultimate question is whether age was a determining factor in the employer's decision." *See MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1122 (10th Cir.1991). The Tenth Circuit has described the plaintiff's burden on summary judgment as follows:

> To avoid summary judgment, a party must produce "*specific* facts showing that there remains a genuine issue for trial...." Thus, plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.

*Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988) (citations omitted).

■ The court finds that plaintiff has produced no evidence that age was a determining factor in defendant's decisions. Plaintiff's opposition brief is devoid of any factual record that would establish pretext or direct evidence of discrimination. As to the ultimate question of whether age was a determining factor in defendant's decisions to discharge and terminate, plaintiff has simply produced no evidence beyond his showing of a prima facie case. Accordingly, the court finds that defendant is entitled to summary judgment on plaintiff's age discrimination

claims for wrongful demotion and wrongful termination.

### B. Plaintiff's FLSA claims

Defendant also seeks summary judgment on plaintiff's retaliatory demotion and retaliatory discharge claims brought under section 15(a)(3) of the FLSA. Section 15(a)(3) provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act ..., or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

■ When the immediate cause or motivating factor of an adverse employment action is the employees' assertion of statutory rights, the adverse action is discriminatory under § 215(a)(3). *See Martin v. Gingerbread House, Inc.,* 977 F.2d 1405, 1408 (10th Cir.1992); *Love v. RE/MAX of America, Inc.,* 738 F.2d 383, 387 (10th Cir.1984). If retaliation is not the motivating factor, then the adverse action is not unlawful. *Martin,* 977 F.2d at 1408.

■ In analyzing FLSA retaliation claims at the summary judgment stage, courts commonly apply the shifting burden analysis described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 876 (2nd Cir.1988); *Brock v. Richardson,* 812 F.2d 121 (3rd Cir.1987); *Strickland v. Mica Information Systems,* 800 F.Supp. 1320 (M.D.N.C. 1992). The Tenth Circuit has not had occasion to address whether the McDonnell Douglas analysis applies to retaliatory actions under section 215(a)(3). However, the Tenth Circuit commonly applies the McDonnell Douglas analysis to other retaliation claims,[6] and we believe it would also do so under section 215(a)(3).

■ The elements of a prima facie case of retaliation are: (1) participation in an FLSA proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's action. *Burrus,* 683 F.2d at 343. The Tenth Circuit has described the shifting burdens as follows:

> If a prima facie case is established, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. The defendant need not prove the "absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason." If evidence of a legitimate reason is produced, the plaintiff may still prevail if [he] demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff.

*Burrus,* 683 F.2d at 343 (citations omitted).

■ The court finds that plaintiff has established a prima facie case of retaliation on both his discharge and termination claims. As to the first two elements of a prima facie case, plaintiff has produced evidence that he was a named plaintiff, along with his wife, in an FLSA action for unpaid overtime against defendant, and that both his demotion and discharge occurred subsequent to the filing of the suit. As to the causal connection, the Tenth Circuit has held that the causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *See Love,* 738 F.2d at 386. Plaintiff's demotion occurred approximately three months after the filing of his FLSA action, and his discharge occurred during the pending litigation. The court finds these facts sufficient to justify an inference of retaliatory motive for the purpose of establishing a prima facie case.

■ In response, defendant has articulated the same legitimate, nondiscriminatory reasons for both its demotion of plaintiff and its later termination of plaintiff discussed above in connection with plaintiff's ADEA

---

6. *See Burrus v. United Telephone of Kansas, Inc.,* 683 F.2d 339 (10th Cir.1982).

claims. Specifically, as to plaintiff's demotion, defendant has presented evidence regarding its belief that plaintiff was not truthful in connection with an investigation undertaken by defendant following its receipt of a complaint from an employee at the Schnucks store where plaintiff was manager regarding an alleged encounter she had with plaintiff. As to plaintiff's termination, defendant has presented evidence that plaintiff misrepresented his marital status on his employment application for the purpose of gaining employment at Schnucks, that plaintiff continued to misrepresent his marital status following his employment, and that defendant therefore terminated him consistent with its policy of terminating persons found to have deliberately falsified their employment applications.

Plaintiff has put forward several reasons why he believes the defendant's proffered reasons for dismissing him were pretextual, none of which the court believes have any merit. First, plaintiff contends that defendant was not justified in terminating him because he "did not misrepresent his residence address because he had no residence at the time of his application." However, plaintiff directly contradicts this statement in his November 30, 1993 deposition wherein he admits he lived on Lowell both before and after completing his employment application.

Plaintiff also contends that defendant's proffered reason for terminating him was pretextual because William Jones, a management employee of defendant, admitted in discovery responses that defendant had not disciplined or terminated any employees specifically because of a misrepresentation as to marital status on an employment application. This evidence is less than convincing, however, due to the fact that Mr. Jones additionally stated that he was unaware of any other employee who had made such a misrepresentation. Mr. Jones went on to testify that had defendant known of anyone who had made such a misrepresentation to gain employment, that person would have been terminated. Mr. Jones' testimony is supported by evidence in the record that defendant has terminated eighteen persons since 1988 for falsification of their application of employment.

In short, as with plaintiff's ADEA claims, the court finds that plaintiff has failed to present sufficient evidence to create a question of fact as to whether defendant's proffered reasons for its actions are pretextual. Plaintiff has failed to present any evidence, beyond his prima facie case, that the immediate cause or motivating factor of defendant's adverse employment action was plaintiff's assertion of statutory rights. Although he may feel that his demotion and termination were unjustified, as this court has previously observed, "[t]he decision to terminate an employee who is considered to be untrustworthy is the prerogative of the employer, and it is not the court's province to second guess such decisions once it is established that a prohibited motive was not involved." *John v. Lujan*, No. 88–2550 (D.Kan. Feb. 26, 1992) (1992 WL 41354); *see also Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (courts should not second guess an employer's business judgment). Accordingly, because of the inability of plaintiff to bring forward evidence of a prohibited motive beyond the mere proximity in time which supported his prima facie case, the court finds that defendant is entitled to summary judgment on plaintiff's retaliation claims.

## V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant's motion for summary judgment (Doc. # 56) is granted. Plaintiff's ADEA claims for wrongful demotion and termination and FLSA claims for retaliatory demotion and discharge are dismissed.

**IT IS SO ORDERED.**